UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JAVIER HUMBERTO ONTIVEROS,   No. 12-12457 TA

    Debtor.

**MEMORANDUM OPINION**

    Debtor's ex-wife, Victoria E. Vasquez, moved to dismiss this Chapter 13 case for cause, including bad faith, with prejudice to refiling. Vasquez also asked for sanctions equal to the attorney's fees she incurred. The Chapter 13 trustee filed her own motion to dismiss. The Court held a final hearing on the motions on January 14, 2014.[1] For the reasons set forth below, the Court concludes that the case should be dismissed without prejudice, with no sanctions awarded.

    I.    Facts

The Court finds the following facts:[2]

    1.    Mr. Ontiveros filed this case under Chapter 11 on June 28, 2012. Gerald Velarde was his counsel.

    2.    Before filing the case, Debtor and Vasquez were divorced and had entered into a

---

[1] The Debtor also filed a Motion to Enforce the Violation of the Bankruptcy Automatic Stay, doc. 281 (the "Stay Motion"). Based upon the disposition of this case, the Court finds that the motion is moot. Furthermore, when the motion was filed, as well as when the final hearing was held, the proceeding at issue (an upcoming state court status conference) had not yet occurred. The Court did not think it appropriate to enter an order that the parties, in the future, refrain from violating the automatic stay. The Bankruptcy Code already contains such a prohibition.

[2] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Marital Settlement Agreement ("MSA"). The Third Judicial District Court for the State of New Mexico approved the MSA on April 20, 2010, in cause no. D-307-DM-201000541.

3. On the petition date, the Debtor owed Vasquez about $404,000 under the MSA, all of which was characterized by the parties as property settlement.

4. Shortly after the case was commenced Vasquez filed motions for relief from stay and to dismiss.

5. Between June and October, 2012, Vasquez and the Debtor actively prepared for final hearings on Vasquez's motions.

6. On October 11, 2012, the Debtor and Vasquez entered into and filed an Agreement or Stipulation, doc. 74 (as amended, the "Stipulation"), settling many of their disputes.

7. Among other matters, the Debtor and Vasquez agreed in the Stipulation that $80,000 of Debtor's obligation to Vasquez under the MSA would be treated as a domestic support obligation.

8. The Court entered orders approving the Stipulation, after notice to creditors and an opportunity to object.

9. Apparently the negotiation and execution of the Stipulation caused a falling out between the Debtor and Mr. Velarde. Mr. Velarde sought permission to withdraw as counsel on February 15, 2013, which was granted.

10. On April 4, 2013, the Debtor filed a *pro se* motion to set aside the Stipulation, alleging inter alia that Mr. Velarde pressured him into signing it.

11. On May 3, 2013, the Court converted the case to a Chapter 13 case.

12. On June 13, 2013 the Debtor retained Ron Holmes as his new bankruptcy counsel.

The next day Mr. Holmes filed a Chapter 13 plan.

13. On September 4, 2013, the Court denied Debtor's motion to set aside the Stipulation.

14. The Debtor filed a First Amended Chapter 13 Plan on October 7, 2013 (the "Amended Plan"), which proposed to transfer certain personal property to Vasquez in full satisfaction of his $80,000 domestic support obligation.

15. Debtor abandoned the Amended Plan on November 8, 2013. By then his relationship with his new bankruptcy counsel had soured, prompting Mr. Holmes to withdraw as counsel shortly thereafter.

16. The Debtor stopped making plan payments in December, 2013.

17. The Debtor testified at the January 14 hearing he would neither pursue confirmation of the Amended Plan nor propose a plan that required monthly payments of more than $975.

18. Priority claims totaling about $136,500 have been asserted against the Debtor: Vasquez's domestic support obligation ($80,000); Gerald Velarde's unpaid attorney fees ($8,499.41); Ronald Holmes' unpaid attorney fees ($21,213.73); federal taxes ($16,824.45); New Mexico taxes ($7,934.83); and Texas taxes ($2,005.21).

19. The Chapter 13 Trustee is currently holding about $9,575, paid to her by the Debtor during the pendency of the Chapter 13 case.

## II. Dismissal or Conversion for Cause

A. 11 U.S.C. § 1307(c) Standards.

A Chapter 13 bankruptcy case may be dismissed or converted for "cause." Eleven

-3-

examples of cause are listed in § 3107(c).[3]

      1.    <u>Bad Faith</u>.  Although not enumerated in § 1307(c), case law makes clear that "cause" for dismissal exists if the debtor filed for bankruptcy relief in "bad faith."  *See, e.g., In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993).  In determining the merit of a bad faith dismissal motion under § 1307(c), the Court should consider the following factors:

> (1) the nature of the debt, including whether the debt would be nondischargeable in a Chapter 7;
> (2) the timing of the petition;
> (3) how the debt arose;
> (4) the debtor's motive in filing the petition;
> (5) the effect of the debtor's actions on creditors;
> (6) the debtor's treatment of creditors pre- and post-petition; and
> (7) whether the debtor has been forthcoming with the court and creditors.

*In re Gier*, 986 F.2d at 1329, citing and following *In re Love,* 957 F.2d 1350, 1354 (7th Cir. 1993).  *See also In re Myers*, 491 F.3d 120, 125 (3rd Cir. 2007) (using the same factors).  The goal is to determine "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit" of Chapter 13.  *Gier,* 986 F.2d at 1329 (quoting *Love*).

The Court must review the "totality of the circumstances" to determine if the filing was in bad faith.  *Gier,* 986 F.2d at 1329, citing *Love,* 986 F.2d at 1354-55.

      2.    <u>Unreasonable Delay</u>.  A broad range of debtor behavior has been held to constitute unreasonable delay that is prejudicial to creditors.  *See, e.g., In re Dempsey*, 247 Fed. Appx. 21, 25 (7th Cir. 2007) (unpublished) (protracted inability to demonstrate feasibility of a plan constituted unreasonable delay); *Howard v. Lexington Investments, Inc.*, 284 F.3d 320 (1st Cir. 2002) (failure to timely file state tax returns was unreasonable delay); *In re Wheeler*, 2013 WL 6922768 (Bankr. N.D. Ind. 2013) (failure to notify trustee or creditors of material change in

---
[3] Unless otherwise noted, all statutory citations are to 11 U.S.C.

-4-

circumstances was prejudicial to creditors); *In re Lin*, 499 B.R. 430 (Bankr. S.D.N.Y. 2013) (failure to confirm a plan in two years in Chapter 13 and proposal of a plan that is not feasible constituted unreasonable delay that was prejudicial to creditors).

    3. <u>Failure to Make Plan Payments</u>.  Unsurprisingly, failing to make plan payments before confirmation has been held to constitute cause to dismiss or convert a Chapter 13 case.  *See In re Barbel*, 183 Fed. Appx. 227, 229 (3rd Cir. 2006) (falling four months behind in plan payments prior to confirmation constituted cause to dismiss or convert).  *See also In re Izen*, 2012 WL 2994497 (Bankr. S.D. Tex. 2012) (cause existed where debtor had not made any plan payments since filing her chapter 13 case).

    4. <u>Other</u>.  Even if no bad faith is alleged, courts have used the "totality of the circumstances" test to determine if cause exists under § 1307(c).  *See, e.g., Baker v. Salamone*, 2012 WL 1086069 at *2 (N.D.N.Y. 2012) (in evaluating a dismissal under section 1307(c), courts apply a totality of circumstances test); *In re Nelson,* 2007 WL 2385094, at *4 (9th Cir. BAP) ("in light of the totality of the circumstances, the bankruptcy court correctly dismissed the debtor's case pursuant to § 1307(c) as in the best interests of creditors and the estate"); *In re Ho,* 274 B.R. 867 (9th Cir. BAP 2002) (any finding of § 1307(c) cause would require a totality of the circumstances analysis).

  B. <u>There is "Cause" to Dismiss or Convert</u>.

    1. <u>Good Faith</u>.  The Court, taking into account the totality of the circumstances and weighing the factors set out in *Myers*, finds that the Debtor filed the petition in good faith.  The Court finds that that factors 1, 2, 3, 4, and 7 weigh, at least to some extent, in the Debtor's favor, while factors 5 and 6 weigh against the Debtor.  Overall the Court concludes that

the Debtor filed the petition in good faith. Until Mr. Holmes withdrew as counsel and the Debtor declined to make plan payments in an amount sufficient to pay priority claims, it seemed that this case might be successful.

      2.    <u>Unreasonable Delay</u>. Nevertheless, the Debtor is no longer proceeding toward confirmation, and thus is causing unreasonable delay and violating the purpose and spirit of Chapter 13. The Debtor filed this case because of his bitter dispute with Vasquez. He firmly believes that Vasquez procured the MSA by fraud. The Court held lengthy hearings on this and related issues, and ruled that the state court has exclusive jurisdiction to amend or set aside the MSA. It is apparent the Debtor has not accepted this ruling, and has been unable to obtain any desired relief from state court.

At the final hearing the Debtor stated he would not seek confirmation of any plan requiring monthly payments of more than $975. This means that plan confirmation is not possible. 11 U.S.C. § 1322 requires that a plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." 11 U.S.C. §1322(a)(2). Given priority claims of about $136,500, monthly payments would have to be at least $2,275. Debtor's refusal to make payments in that amount means that prolonging this Chapter 13 case would unduly delay creditors to their prejudice.

      3.    <u>Failure to Make Plan Payments</u>. Additionally, the Debtor stopped making plan payments in about December, 2013. This lapse is also cause to dismiss or convert the case and constitutes, inter alia, unreasonable delay.

      4.    <u>Other</u>. This case was filed about 18 months ago and has been pending as a

-6-

Chapter 13 case for about 8 months. No creditor has received any payment post-petition. While the case was more complicated than the average Chapter 13, creditors are entitled to a resolution by now.

Based on § 1307(c)(1) and the totality of the circumstances, the Court concludes that cause exists to dismiss or convert the case.

### III. Dismissal or Conversion

If "cause" exists, § 1307(c) states that the Court "may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate …." Under § 1112(b),[4] which has nearly identical language, courts have weighed the following factors to determine whether to dismiss or convert:

> (1) whether some creditors received preferential payments; (2) whether equality of distribution would be better served by conversion rather than dismissal; (3) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (4) whether the debtor would simply file a further case upon dismissal; (5) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (6) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise; (7) whether any remaining issues would be better resolved outside the bankruptcy forum; (8) whether the estate consists of a "single asset"; (9) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (10) whether a plan has been confirmed and whether any property remains in the estate to be administered; and (11) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re Ferri*, 2010 WL 1418147, at **3-4 (Bankr. D.N.M. 2010) citing *In re Helmers,* 361 B.R. 190, 196-97 (Bankr. D. Kan. 2007); *In re Hampton Hotel Investors, L.P.,* 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001). *See also* Alan N. Resnick and Henry J. Sommer (Co–Editors), 7 COLLIER ON

---

[4] Section 1112(b) (the chapter 11 counterpart to § 1307(c)) provides: "[T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

BANKRUPTCY, ¶ 1112.04[6] (15th ed. rev.2005).

Considering the eleven factors set forth above, they either do not apply (1, 2, 3, 5, 6, 8, 10, and 11) or else favor dismissal (7 and 9). In general, there is no evidence a Chapter 7 trustee would be able to liquidate estate property and provide a dividend to unsecured creditors. Conversion therefor would cause further delay but would not benefit creditors.

Further, Vasquez, Holmes, and the Chapter 13 Trustee have asked for dismissal rather than conversion. "It is appropriate for the Court also to consider the preferences expressed by creditors for either dismissal or conversion when determining whether to dismiss or convert a debtor's bankruptcy case . . . ." *Ferri,* 2010 WL 1418147, at *4. (citing Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 312.1 at ¶4, June 10, 2004). "Presumably, the parties will be the best judge of their own best interests...." *In re Vaughan*, 429 B.R. 14, 31 (Bankr. D.N.M. 2010), citing *In re Van Eck*, 425 B.R. 54, 67 (Bankr. D. Conn. 2010). For this reason as well, the Court finds that dismissal is in the best interests of the creditors.

### IV. Dismissal with Prejudice to Refiling

Vasquez asks the Court to dismiss the case with prejudice to refiling under 11 U.S.C. §§ 109(g) and § 349(a). 11 U.S.C. § 109(g) provides:

> [N]o individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court or to appear before the court in proper prosecution of the case . . . .

11 U.S.C. § 349(a) states:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case . . ., of debts that were dischargeable in the case dismissed . . . .

The controlling case in the Tenth Circuit on dismissal with prejudice is *In re Frieouf*, 938

-8-

F.2d 1099 (10th Cir. 1991). In *Frieouf* the Tenth Circuit held: "[A] prejudicial dismissal under section 349(a) must be premised on bad faith conduct that is prejudicial to a creditor." *Id.* at 1104. "Dismissal with prejudice is a severe sanction to which the courts should resort only infrequently." *Hall v. Vance*, 887 F.2d 1041, 1045 (10th Cir. 1989). In the Tenth Circuit, a dismissal with prejudice can bar refiling no more than 180 days. *Frieouf,* 938 F.2d at 1104.

As set forth above, the Debtor did not file this case in bad faith. He has not disobeyed any orders of the Court or failed to appear in proper prosecution of the case. He timely filed his schedules and statement of financial affairs. Much of the Debtor's energy has been focused on legitimate goals. He proposed two plans and, until recently, made the required plan payments. The Court wishes that the Debtor, after trying and failing to set aside the MSA and Stipulation, had listened to his bankruptcy counsel and agreed to a plan that could be confirmed. He did not, so the case must be dismissed. Nevertheless, the Court does not believe the Debtor conducted this case in bad faith.

One concern Vasquez raised is the spectre of a second bankruptcy filing. While the concern is valid, the Bankruptcy Code has protections preventing abuse. For example, 11 U.S.C. § 362(c)(3) provides that if the Debtor files another case within one year after dismissal, the automatic stay terminates 30 days after the second case is filed. If the Debtor were to refile within a year, it is unlikely the Court would extend the automatic stay unless, at a minimum, the Debtor proposed (and began payments on) a plan that included full payment of all priority claims.

Giving due weight to all of the facts and circumstances of this case, the Court concludes that the case should not be dismissed with prejudice.

V. Sanctions/Attorney's Fees

Vasquez also asks for sanctions in the amount of the attorney's fees she incurred in the bankruptcy case. She bases her request on 28 U.S.C. § 1927 and/or Bankruptcy Rule 9011.

A. 28 U.S.C. § 1927.

28 U.S.C. § 1927 is titled "Counsel's liability for excessive costs." It provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Based on Tenth Circuit law, the Court cannot grant Vasquez relief under this statute. In *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1086 (10th Cir. 1994), the Tenth Circuit held that bankruptcy courts cannot impose sanctions under § 1927. The pertinent discussion follows:

> We must agree with *In re Perroton*—which extensively discusses the cases and the legislative history—that the bankruptcy court may not impose sanctions under § 1927. An argument can be made to the contrary: the U.S. Constitution art. I, § 8 [4] contemplates federal legislation creating courts exercising jurisdiction over bankruptcies; § 1927 does not explicitly reference § 451; and § 451 itself states that courts of the United States "includes" courts in which judges hold office during good behavior.
>
> Compelling to us, however, is that amendments in the 1978 Bankruptcy Act explicitly added to the § 451 definition "and judge of the bankruptcy courts, the judges of which are entitled to hold office for a term of 14 years." Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 213, 1978 U.S.C.C.A.N. (92 Stat.) 2549, 2661. That amendment was to become effective June 28, 1984; but a 1984 amendment to § 402(b) made by Pub.L. No. 98-353, § 113, 1984 U.S.C.C.A.N. (98 Stat.) 333, 343, had the effect of eliminating that language. There is no explicit legislative history as to why this change was made. From the comment by the senators involved in passing the 1984 amendments, especially Senator Hatch, *see* 1984 U.S.C.C.A.N., 98th Cong. 2d Sess. at 576, 594-97, 602-06, the elimination appears to be from concerns arising as a result of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which struck down portions of the 1978 Bankruptcy Act as unconstitutional. Aided

-10-

by this legislative history, we believe we must hold that bankruptcy courts are not within the contemplation of § 1927.

40 F.3d at 1086. *See also Ackerman v. Novak,* 483 F.3d 647, 652 (10th Cir. 2007) (citing *Courtesy Inns* with approval); *Glannon v. Garrett & Associates, Inc.,* 261 B.R. 259, 268 (D. Kan. 2001). Because of this plain holding, the Court cannot award Vasquez attorney fees under 28 U.S.C. § 1927.

  B. <u>Rule 9011</u>.

Bankruptcy Rule 9011 provides in part:

(b) Representations to the court

  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

  (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

  (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

  (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

  (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions

  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions

-11-

stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Vasquez asked for attorney fees under this rule. She provided no evidence, however, of the amount of fees she incurred attributable to the Debtor's alleged violation of the rule. Instead, the only evidence before the Court is counsel's statement that the Vasquez's attorney's fees for the case totaled about $40,000. This is insufficient. Clearly, much of the litigation in this case related to positions the Debtor took that did not violate Rule 9011. Had Vasquez tied particular fees incurred to particular, questionable positions or motions of the Debtor, the Court could have weighed whether an award of some kind was merited. Without a specific breakdown of expenses, however, there is no way the Court can do so. Vazquez's Rule 9011 sanctions request therefore must be denied.

## VI. Disbursement of Funds Held by the Chapter 13 Trustee

The Chapter 13 Trustee is currently holding about $9,575 paid to her by the Debtor during the pendency of the Chapter 13 case. The parties have raised the issue of how to disburse the funds. Ronald Holmes, one of Debtor's former attorneys, has asked that the money be paid to administrative claimants, while Vasquez has asked that it be paid to her on account of her domestic support obligation claim.

11 U.S.C. § 1326(a) provides:

> (1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
>     (A) proposed by the plan to the trustee;
>
>     …
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall

-12-

> distribute any such payment in accordance with the plan as soon as is practicable. *If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).*

(italics added).

Case law confirms that, based on this section, the funds held by the Chapter 13 Trustee should be used first to pay § 503(b) administrative expense claims. *See, e.g., In re Oliver*, 222 B.R. 272, 273 (Bankr. E.D. Va. 1998) (plain language of § 1326(a)(2) requires return of funds to debtor after deducting any unpaid claim allowed under § 503(b)).

The docket in this case shows that the following administrative expenses have been approved by the Court but remain unpaid:

| Claimant | Fees and expenses approved | Fees Paid | Balance | % of fees paid |
| --- | --- | --- | --- | --- |
| Gerald Velarde | $21,080.41 | $12,581.41 | $8,499.41 | 59.68% |
| Ronald Holmes | $21,213.73 | $0 | $21,213.73 | 0% |

Vasquez's argument that her domestic support obligation claim should be paid before administrative expense claims has support in 11 U.S.C. § 507(a)(1)(A), which provides that such claim has the highest priority, even ahead of § 503(b) administrative expense claims. Thus, the normal payment "waterfall" for confirmed Chapter 13 plans places Vasquez's domestic support obligation claim ahead of Messrs. Velarde's and Holmes' attorney fees claims.

Section 507(a)(1)(A)'s priority scheme is not followed by § 1326(a)(2), however. Rather, the plain language of the latter section is that funds held by the Chapter 13 Trustee are paid to allowed § 503(b) claims, ignoring priority claims. The Court did not find any legal support for Vasquez's position that the language of § 1326(a)(2) should read with a judicial gloss preferring

-13-

domestic support obligation claims. Given the clear terms of § 1326(a)(2), the Court will not read the section as directing payment to an entirely unnamed class of creditors.[5]

When there are insufficient funds to pay administrative claims in full, each claimant should receive compensation *pro rata* based on the total amount available. *In re Kaiser Steel Corp.*, 74 B.R. 885, 891 (Bankr. D. Colo. 1987) ("All administrative claims which are allowable under Section 503 share pro rata on the same basis."). Accordingly, the Chapter 13 trustee should distribute the funds she holds to Mr. Holmes, until such time as he has been paid the same percentage of his fees as Mr. Velarde.[6] The balance, if any, should then be paid to the two attorneys *pro rata*.

### VII. Conclusion

Cause exists to dismiss this case, including unreasonable delay and failure to make plan payments. Despite the failure of the case, the Debtor's conduct does not merit dismissal with prejudice, in part because there are protections in § 362 that Vasquez could invoke if the Debtor filed a new case. While the Court understands why Vasquez sought to recover a portion of her attorney's fees, there is insufficient evidence upon which to grant relief. Finally, the funds paid by the Debtor to the Chapter 13 trustee should be distributed to the Debtor's counsel as set forth above.

The Court will enter orders consistent with this memorandum opinion.

---

[5] There may be good reasons why Congress chose to ignore priority claims in § 1326(a)(2). One possible reason: attorney fee claims are dischargeable, while domestic support obligations are not.

[6] If the Court is right that the Chapter 13 Trustee is holding $9,575, then Mr. Holmes would be entitled to the entire amount, since the payment would bring his percentage up from 0% to 45.14%., which would still be less than Mr. Velarde's 59.68%.

-14-

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered on docket: January 31, 2014.

Copies to:

Javier Humberto Ontiveros
175 W. Afton
La Mesa, NM 88004

E.P. Bud Kirk
600 Sunland Park Dr.
Bldg. Four, Suite 400
El Paso, TX 79912

Lloyd Bates, Jr.
P.O. Box 305
Las Cruces, NM 88004

Kelley Skehen
Chapter 13 Trustee
625 Silver Ave. SW, Suite 350
Albuquerque, NM 87102

Ron Holmes
112 Edith NE
Albuquerque, NM 87102

-15-